Next case before us is 20-4083, perhaps Geddes v. Weber County. Would counsel for appellant proceed? Thank you, your honor. Good morning, your honors. May it please the court. I think the real difference or real dispute that Applebee's and our side is having is that they believe that the complaint doesn't state a cognizable claim because we cite to the 14th amendment rather than the 4th amendment. And I think that that position and the position of the district court really runs afoul of the principle that the district court and this court are well established principle that the courts are to look to the substance of a complaint rather than the labels that a party may put on their claims. In this case, it's not even a label on the claim, which is clearly a section 1983 claim for use of excessive force. But the substance of the complaint in this case, over and over again, claims that the individual jailers used excessive force that was objectively unreasonable in the circumstances presented. That states a claim, the substance of the claim upon which relief could be granted. The. Excessive force is not it's not a freestanding claim, I mean, I mean, it has to be attached to an amendment, right? And you will you answer to the wrong amendment, which was the 14th amendment. Right. And that's I think that's a it does have to be attached to a an amendment. But in in this case, I think when you do look at the substance of the complaint and it's absolutely clear what we're claiming is that there is a use of excessive force, that it was objectively unreasonable. That's the standard that applies. Well, now what applies both under this court's reading in McCowan applies both under the 4th amendment and the 14th amendment. Which therefore, why would it be helpful to you to to suggest that that that, yes, it's an objective lens that we're looking at. And you're well, that would have been more confusing, would it not? For the if the objective lens applied to both the 14th amendment and the fourth, then wouldn't the court have been confused as to what what amendment you were invoking? And doesn't that matter? In this case, with what we actually state in the complaint, I don't think so, if because we're saying that it is the objective lens, which now under this court's reading of Kingsley applies to both the 14th and 14th amendment for an excessive force claim that it doesn't matter because it was clearly they put the we put the defendants on notice with the claim was that we were claiming that the use of force was objectively unreasonable. All right. Putting aside whether you preserved your Kingsley argument for a second, can't even post Kingsley the 4th amendment and 14th amendment excessive force claims. They are not coterminous, are they? I mean, under under the 14th amendment, you have to show that there was you have to show the extent of the plaintiff's injury, which you don't have to do under Graham's test. Right. I mean, Graham is to tell you the circumstances. I get that. But under the elements of the tests that are articulated, they're different. Right. I don't think they are different. I think this court in McCowan read them as coextensive is that they aren't different. McCowan said they both have an objective standard. They do have an objective standard. But is there a language in a McCowan that says they're coextensive? I mean, on their face, they aren't coextensive. I think what the language in McCowan is, is that in that case, that the whether you apply the 14th amendment or whether you apply the 4th amendment, also, as this course did in the more recent decision of Raul, the it doesn't matter that they are coextensive. There is an inquiry into and these are when the court, the Supreme Court in Graham and the Supreme Court in Kingsley, I think all that the Supreme Court in Kingsley did was take the Graham factors, the objective reasonable test and apply them to the situation that the officers find themselves in when they're in pretrial detention. I disagree, too, that I realized under a state of a state of Booker that there was a demarcation between when somebody is a pretrial detainee and when somebody is a an arrestee that the in this case, given the timing of the getting the judicial stamp of approval on the affidavit of probable cause, that they would be considered that Mr. Getty's would have been considered a an arrestee rather than a pretrial detainee. But I think that that flies in the face of the facts of actually what happened here is the trooper relinquished custody of the county. The county had custody. This was long after he was arrested. And for all intents and purposes, for the facts of the case, the circumstances really call for application of the factors enunciated in Kingsley. But the test was a judicial finding of probable cause. Right. Isn't that what Booker calls for? Well, yes and no. They repeatedly talk in Booker about a hearing, a probable cause hearing. But I don't disagree with you that it was a judicial determination of probable. OK, well, this is what really I'm struggling with in terms of the posture of this case as as it is. It comes here. I don't I think there is case law that accepts the premise that you would not be bound necessarily by your complaint, that that even at the course of summary judgment, you could alter it by virtue of the briefing and by virtue of your position. You could alter the nature of the amendment that you're relying on. I think there's a good argument you could do that. But my concern here is even in your appellate brief, you have not staked out a position as to what amendment you're relying on. You didn't and you haven't asked for and you didn't ask the district court. All right. All right. They've caught me. You're right. I'm relying on the Fourth Amendment. Let me amend. You didn't do that either. And so to the extent that there's this waffling, it appears in which you are coming down in one camp. And therefore, why shouldn't the district court say, look, you didn't ask me for an amendment. You haven't told me definitively that you're relying on the Fourth Amendment as opposed to the 14th. And your brief below didn't definitively stake out a position on that, nor have you done that on appeal. So why? Why shouldn't the court say, fine, if you if you aren't going to stake out a position? Well, I'm going to go with what you've said. Fourteenth Amendment. End of story. I disagree with the characterization of our filings in the district court and the filings here is we argued in the district court that there was no practical difference between the application of the standards. We also argued you have you have said there's no practical difference. And you've said that. But does that doesn't you can say I'm relying on the Fourth Amendment. But by the way, your honor, there really is no practical difference. But you haven't done that. And even right here, you say that Kingsley is probably the better test than the other one. And if Kingsley is the better test, why shouldn't you lose? Because because it's clear that you're at least by virtue of Booker, he was an arrestee. And. You froze there for I couldn't tell whether I'm here. OK, go ahead. You're listening attentively. Go ahead. The we actually did in the district court and now argue that page 139 of the appellant's appendix that the excessive force claims are governed by the Fourth Amendment objective reasonable standard. So that's what and then we spent a good deal of time saying that's the standard that applies here. So. But you haven't even done you. You just said that you think Kingsley test should apply. Kingsley is not a Fourth Amendment test. No. Well, and I don't take the time to go back and look at your brief, but in your brief, yes, you talked about Graham. But do you did you ever disclaim I am not relying on the 14th Amendment? I am relying on the Fourth Amendment. Did you ever say that? I didn't see that anywhere. I don't see that in your appellate brief. No, and I don't I don't think our position is that it doesn't matter whether we cited to the Fourth Amendment or the 14th Amendment, because for the purposes of evaluating the facts that in the substance of our complaint is that both standards are the same. It doesn't matter which one we cite to. And as the appellees stated in their brief in response, the. Prior to McGowan, it was not clear whether the objective test that applies under Graham would also apply to a pretrial detainee, I think, in light of the Kingsley decision, I probably the demarcation that this court reached is probably not correct is because the way the Supreme Court evaluated the pretrial detainees circumstances in that case under Graham, it's clear that when someone is a pretrial detainee depends on where they find themselves rather than judicial termination of probable cause. Well, we're not situated right here to re-evaluate the state of Booker, right? So I'm sorry, I didn't. We're not situated here to revisit what Booker's rule is as to when you are a pretrial detainee and when you're an arrestee, are we? I don't think you need to, as this court has done essentially since McGowan from McGowan forward is treat decide that it doesn't matter whether somebody for the purposes of evaluating the facts, whether someone is a an arrestee or pretrial detainee in the sort of circumstances we have here. I mean, clearly, when someone is arrested on the street, the Fourth Amendment applies and for a Fourth Amendment claim, you actually have to have a seizure. And in this case, when somebody is being held by a county jail, as they were in this case, pretrial, there is no seizure and you can't actually make a Fourth Amendment claim. Now, I understand that Booker decided that there was a demarcation there, but I think McGowan has decided that under Kingsley, that it doesn't matter once they're in sort of the pretrial detention factual situation. Well, why do you get the benefit of Kingsley anyway? I mean, you didn't cite it below. This issue was front and center in the briefing below that there was a there was a concern about whether it was the 14th Amendment or the Fourth Amendment. If your view was that the Kingsley test should have applied here and therefore they were coterminous and you would you would argue that there essentially was a distinction without a difference. Why should you even get the benefit of Kingsley? Well, we did argue that it is a distinction without a difference that we argued. But you didn't you didn't you didn't say Kingsley would have the benefit of that, which is it's a distinction without a difference. Well, you didn't give the district court an opportunity to consider that, too. Well, I think we did repeatedly argue that to the district court that the difference did not matter and that the objective reasonable test under the Fourth Amendment is what applies. But absent Kingsley, how would the court have known that? I mean, how would the court have been able to evaluate that and know that? Well, we did argue and we didn't have at that point the the the case was decided, there was no argument, I think, to a great extent because the court had stopped doing oral arguments early last year. And so when McGowan came out, it was after the case had been fully briefed. And so this court's interpretation of Kingsley is applying essentially the same test in the situation of someone being held by a jail wasn't there for the benefit of the court. And so I think if we did have. Go ahead. No, please. I'm sorry. Go ahead. No, I think if we did have the benefit of argument, I suspect one of us would have looked and found McGowan. But that didn't happen. There was no oral argument in the case. So as you said here today, I take it. Is it your view that the whether we apply Fourth Amendment rubric or whether we apply a 14th Amendment rubric is irrelevant? Yes. OK. And and let's let's assume that that the court erred in its threshold view determination as it relates to dismissing, but essentially you invoke the wrong amendment. The court never reached the qualified immunity issues in this case. If if if we were to find that you should prevail, I take is it would it be appropriate for us to remand for the district court to address those qualified immunity issues in the first instance? It it is probably more appropriate than having this court just simply based on this record do that. That would give the police the opportunity again and as well as our opportunity to brief the issue before the district court. We did brief it and it was presented. But I think I would err on the side of your suggestion that perhaps it's better to have the district court address the issue first. OK, and and and I and I just want to put the fine point in this point, when I juxtapose the elements of Graham and the elements of Kingsley, yes, they're similar, but they aren't the same to the extent that they are different. You're saying those differences are irrelevant. Do I get that? Am I correct? Not quite. I think that all that the Kingsley did was take Graham, the objective reasonableness test and transpose it into the situation where somebody is being held in a jail. So it's no it's not a different test. It is both of them enunciated non-exclusive factors that are courts are called called upon to consider. The court in Kingsley and in Graham said you can look at these factors, look at other factors if you want to. Simply the same test applied is just the factors that someone found themselves, the in that situation, was presented with and had to consider or the court has to consider after the fact. Thank you, counsel. Thank you. Mr. Hopkins, please proceed. All right. Thank you, your honors. May it please the court. My name is Andrew Hopkins and Frank Myler is also here with me today. And we represent the Weber County defendants. The dismissal of the district court should be affirmed. This is because either one plaintiff's complaint fails to state a Fourth Amendment claim because it alleges he is a pretrial detainee. So the Fourth Amendment would not protect him or two because the undisputed material facts show that his probable cause determination had not occurred at the time of the takedown. And therefore, the 14th Amendment violation that he pled would not protect him either. However, before we get into any of that, plaintiff's framing of this appeal allows for an easy affirmation by this court. In the issues presented in his brief, he asked this court to consider whether his rights were violated under Section 1983. This is easy to answer is no, because Section 1983 does not provide any substantive rights. It's simply impossible to violate somebody's Section 1983 rights because they don't exist. Section 1983 is a mechanism to vindicate rights protected elsewhere. It's not a source of substantive rights. All right. So your points will take it, Mr. Hopkins. But so he identifies in the complaint 1983 and he says it's a 14th Amendment claim. One of the questions that I have generally about the case is, is there not some sort of distinction between identification of the basis for the claim and the underlying test? For example, if you have a Sixth Amendment, Third Amendment, whatever Amendment claim or a statute. Well, there are a number of cases that might enunciate the test. And I wonder if that's not what is beneath this conundrum here. The 14th Amendment, I think everybody probably would agree, is the basis for the claim. The, you know, the Bill of Rights, as we all know, are not, do not apply of their own force to the states. They are incorporated. And so his claim is correctly identified as a 14th Amendment claim. Now, that is, there's a separate issue of what the underlying test is. But isn't Mr. Stevens, didn't he actually invoke absolutely the correct amendment? Now, he may not have added to that and said, well, the test is under the fourth amendment because of Graham versus Conner in the state of Booker. But he identified the statute, 1983, and he identified the applicable amendment, right? Yes, but the problem with that, then, is it creates the 14th Amendment is this kind of this catch all. So it's still the 14th Amendment incorporating in the fourth amendment. And then whereas a 14th Amendment excessive force claim after your pretrial detainee is a different test altogether. And so the problem, I would assume, generally speaking, would be that the defendant is not alerted to the applicable amendment. But here you specifically argued to the district judge that the test is from the fourth amendment, right? Yes. So you knew that it was a fourth amendment claim. Your criticism of Mr. Stevens is, I suppose, to the district judge is you knew that the right amendment applies. You're telling the judge that the right amendment applies. The judge knows the right amendment. And yet, but your argument is, so you should dismiss it with prejudice because he didn't tell the court what everybody knows, which you're representing to the court. Yes. And the plaintiff had the opportunity to ask for leave to amend his complaint. And instead, he stubbornly continued to insist that the 14th Amendment was the correct amendment. How do you distinguish Macbeth versus Hines? Because I think I talked over somebody. I didn't mean to. Go ahead. No, you go. No, you go ahead. And then I'll go. OK. Sorry. How do you distinguish Macbeth versus Hines? There, the panel is very specific that it's a First Amendment claim. The complaint does not identify the First Amendment. The response to the summary judgment on page 716 is refer is relying on the Sixth Amendment. And Judge Abell, writing on behalf of the unanimous panel and a published 10th Circuit opinion, says that the First Amendment applies. Nobody's prejudiced. I, the 10th Circuit, am going to decide in reviewing a summary judgment ruling. Yeah. The First Amendment applies. You know, the plaintiff consistently, even to the court, was invoking the wrong amendment. And yet the court applied the correct amendment and said you can't sustain a summary judgment because the plaintiff has gotten a factual mistake about which amendment. Right. And so in that situation, I would say then plaintiff didn't plead sufficient facts to show a Fourth Amendment violation because he alleges that he's in pretrial detainment. Now, the undisputed material facts showed that he was not a pretrial detainee yet, but his complaint doesn't then allege a Fourth Amendment complaint properly because he says he's a pretrial detainee. Okay. Thank you. Apologies, Judge. That's all right. And I guess my question was, I'm still trying to nail down exactly what happened. I mean, building off of what Judge Bacharach was talking about earlier. I mean, you say, Judge, this is Fourth Amendment, not 14th Amendment. You should pour out Mr. Stevens' client. I mean, did Mr. Stevens ever say, but he never clarified, did he? He never came back and said, yeah, that's what I mean. It's Fourth Amendment. I mean, he never came back in as I read things and made it clear, given the opportunity, what he was arguing. And then he actually even argued for a standard applicable to somebody who was a pretrial detainee and not an arrestee. I mean, am I reading that right? Yes. And the district court even makes note of that, that he could have asked for leave of court to amend his complaint, but the entire time he continued to insist that the 14th Amendment was the applicable. So I'm just wondering, along the line of what Judge Bacharach was asking you, I mean, all for forgiveness and for giving someone some leniency. But when they're asked to clarify something, I mean, are you aware of a case where someone's, you know, asked by both party, by the other party, by the court to clarify something and nail down what their claim is, and they don't do it, that we then continue to play this game as the case goes up? No, I'm not, Your Honor. Okay. What about pages 26 and 27 that Mr. Stevens was quoting from, when he specifically says, quote, excessive force claims are governed by the Fourth Amendment's objective reasonableness standards. He goes on to identify the test and say that he satisfies it. He does it on, in footnote two, he does it on page, you know, 26 through 28. And he does it, let's see, at one other place in, I believe it's in footnote six, if I'm not mistaken. I mean, he specifically, he makes, the problem is he makes all of these arguments, that they're coextensive and that the Fourteenth Amendment is the applicable amendment. But I think he clearly, on pages 26 through 28, says, yeah, the Fourth Amendment applies, and we satisfy that test. Yes. And so all I would say to that is he's just asking them, the court, to read in to his complaint something that it doesn't say. It only says the Fourteenth Amendment. He never specifically asked for leave of court to go and amend it, because he wouldn't concede that the Fourteenth Amendment might not be applicable. Did that happen in Macbeth versus Hines? I am not aware. In fact, in the response, it seemed to me, I pulled it up, they did establish that there was a Sixth Amendment. I mean, they took that position in their response to summary judgment. Well, we can debate it at conference, but what I'm reading is where the panel specifically is referring to the First Amendment claim. And you're right, they rely on the Sixth Amendment, but we can discuss this in the history of this later. Okay. So Plano spends a lot of time trying to argue that the Fourth and Fourteenth Amendment standards are the same after Kingsley, but regardless of what the standards are, or whether they were the same, the undisputed material facts that he had not received the probable cause determination demonstrates he wasn't entitled to any relief under the Fourteenth Amendment standing alone. And any similarity to the test between the Fourth and Fourteenth Amendments is irrelevant to determining the actual constitutional provision that provides him protection. And then I just wanted to touch on for a few minutes, alternative bases to affirm the district court's decision. And so as it relates to the individuals, they are both entitled to qualified immunity. And so for qualified immunity, it's Plano's burden to show that one, there's a constitutional violation, and two, the violation was clearly established at the time of the events. So even assuming a Fourth Amendment violation was pled, the undisputed material facts show that the force used was objectively reasonable even under Graham. Do we really have a basis to make an alternative finding here on those matters? I mean, your briefing, unlike some of the cases where there was a shift in the nature of the claims that were made at summary judgment, for example, your briefing took the position, look, they've invoked the argument. And so this is different than a situation where you said you've invoked the wrong amendment, and I'm going to tell you why you lose under the right amendment. And so really, do we have arguments sufficient in this record for us to evaluate this in the first instance? And why wouldn't we allow the district court to reach these issues in the first instance? So respectfully, your honor, we actually did brief it as if he pled a Fourth Amendment violation and showed why qualified immunity was still appropriate for them. And then it would be appropriate for this court to rule on it because it's been fully briefed. Okay. And where specifically are you talking about in your brief? Did you make an argument under the Fourth Amendment? It was my position, my understanding, you did not do that. One moment, please. All right. I'm not going to Oh, yeah, right here on page 27 of our brief, we said to the Fourth Amendment. All right, go ahead, please. Okay. So, but I think it's important to remember, then with the Fourth Amendment analysis, page 27 of your appellate brief, you're Yes, yes. Well, the point I'm making is that argument was not raised below the district court did not deal with those issues. And ordinarily, isn't it appropriate to have the That's what I'm talking about. Yes. And we did brief these issues in the district court as well. And I don't have that in front of me. Okay, go ahead, please. Okay. So with the grant factors, if you're going to apply a Fourth Amendment analysis, you also have to filter that through Turner versus Sackley and Bell versus Wolfish. And Kingsley talks about this. That is courts need to defer to the policies and practices of the jail that have been designed to keep the facility safe It's plaintiff's burden to show that defendant's actions didn't have a legitimate penological interest. He hasn't done this. The complaint doesn't say anything about the policy about removing boots. It just says that they use excessive force when you remove the boots. The jail has an important interest in maintaining the safety and security of the facility. Removing boots during the booking process serves this function. Otherwise, arrestees could smuggle in all sorts of contraband like weapons or drugs that could hurt themselves or somebody else that they're housed with. There's an urgency for boots to be removed when asked, even when some force needs to be used to ensure compliance. Plaintiff was uncooperative. It's undisputed with the request to remove his boots. And the court has a video and the video speaks for itself. The events, nothing particularly extraordinary. It's the sort of thing that happens in the jail all the time. And he was a drunk arrestee that was necessary that some forces needed to use to ensure compliance. Even when he's shackled and on the ground, did they still need to put a knee in his back? Just to keep him down, yes. And they only did that in as long as it took to take the boots off and then they got off of him as soon as the boots were removed. And the force used doesn't have to be the least restrictive means possible. It just can't be excessive. So defendant's actions were objective and reasonable as shown by the video. And then as far as the clearly established prong, plaintiff hasn't identified a single Fourth Amendment or Fourteenth Amendment case. Well, I should say, let me stick with just the Fourth Amendment, where excessive force was found with a similar fact pattern. And case law is clear that has to be, there has to be required specificity. It can't be at a large level of generality. And without a Fourth Amendment case that's filtering the Fourth Amendment through the Turner v. Sackley factors, it can't be said that the law is clearly established as to that defendant's actions violated the Fourth Amendment and were excessive. And then similarly for the county, there's alternative bases to dismiss the county as well. So plaintiff must show there's a constitutionally defective policy, that it was implemented with at least deliberate indifference, and that it directly caused the alleged injury. Plaintiff doesn't talk about at all. At best, he argues that the sheriff ratified the conduct at his deposition nearly two years later when he was being asked to view the video. And he said, yes, everything looks appropriate in this video. He was retired. He was no longer working for the county. He can't bind the county anymore. And the case that we cited in our brief, Cordova, says that it's clear that events that happen after an incident don't suffice to ratify conduct and thereby bind a injury. So with that, does the court have any questions? Thank you. The court should, this court should affirm the decision of the district court. Thank you. Thank you, counsel. I don't believe Mr. Stevens had any more time. I did not, your honor. I didn't. If you have any more questions, I'd be happy to add to it. If you don't, I've been, I can submit it. No, we'll, we'll, we'll submit the case on. Thank you, counsel, for the good arguments. I appreciate it very much.